**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**DENETRIS BRISTER**                                                    **PLAINTIFF**


**VERSUS**                              **CIVIL ACTION NO. 2:05cv2045KS-MTP**


**WALTHALL COUNTY SHERIFF DEPUTIES,**
**KENNETH MARTIN And GLENN ALLEN, In Their**
**Individual Capacities; COUNTY OF WALTHALL;**
**COUNTY OF LAWRENCE; COUNTY OF MARION;**
**and JOHN DOES 1-5 in Their Individual Capacities**            **DEFENDANTS**



### MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment filed on behalf of defendants Lawrence County and Marion County **[#128]** and by Walthall County and Deputies Martin and Allen **[#121-124]**.  The court, having reviewed the motions, the responses, the pleadings and exhibits on file, the briefs of counsel, the authorities cited and being otherwise fully advised in the premises finds that the motions are well taken and should be granted.  The court specifically finds as follows:



### FACTUAL BACKGROUND

On August 17, 2005, the plaintiff filed her Complaint against the numerous defendants cited above.  She has alleged causes of action arising under 42 U.S.C. §§ 1981, 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and under Article Three, § 23 of the Constitution of the State of

Mississippi.

Factually, Brister, alleges that she was arrested at her Walthall County residence pursuant to a warrant out of Lawrence County for a "bad check" by Walthall County Sheriff's Deputy Kenneth Martin whom Brister claims used excessive force in arresting her. She contends that she was sprayed in her eyes, face and vagina with mace and that her stomach and knee were injured in the arrest. She alleges that Deputy Allen arrived on the scene after arrest and refused her requests for medical help.

The plaintiff alleges that after her arrest she was transported to the Lawrence County jail for three days where she was refused medical care necessitated by Martin's alleged use of excessive force. When she bonded out of the Lawrence County jail, she was then detained on a Marion County warrant for another bad check and carried by a Marion County Sheriff's Deputy to the Marion County jail for three days where she claims she was again refused medical treatment. She claims that she posted bail in Marion County after three days but was detained another five days there. However, it is undisputed that she was in jail a total of less than six days.

Nevertheless, after her release from Marion County, the plaintiff was transported to Walthall County, on an assault charge brought by defendant Martin, where she contends that she was jailed and, for the third time, denied medical care. The record shows, however, that upon arriving at the Walthall County Jail, Brister immediately posted bail and was released from Walthall County without being booked.

Deputy Martin, of course, has a much different story. He contends that upon arriving at Brister's residence to serve the original arrest warrant, the plaintiff went into a fit of rage and attacked him. After a fierce struggle between himself and the plaintiff, he

2

was able to immobilize and handcuff her.  He admits that he sprayed the plaintiff with pepper spray to aid in subduing her but denies that he sprayed it in her vagina area.

When the plaintiff arrived at the Lawrence County Jail on August 18, 2004, the Jailer on duty was Jim Blackmon.  According to Blackmon's affidavit, when the plaintiff entered the jail, she had no visible signs of any injury whatsoever.  She had no blood on her clothing or her person nor did she complain of any injury.  Blackmon states that Brister would not have been accepted into the jail as an inmate if she had any visible injury.

After visually inspecting the plaintiff, Blackmon prepared a Booking Officers Visual Opinion and Inmate Questionnaire Form on the plaintiff.  As part of his visual inspection of the plaintiff, he noted that she had did not have any obvious pain or bleeding or other symptoms needing emergency services.  There were no visual signs of any trauma to the plaintiff nor did she have any purple blotches or other discoloration under her skin, which would include any type of bruising.

In questioning the plaintiff, Blackmon was told that she was not taking any medication for diabetes, heart disease, seizure, arthritis, asthma, ulcers, high blood pressure or psychiatric disorder.  She stated she did not have a history of venereal disease or abnormal discharge.  She stated she had not been recently hospitalized or recently seen a medical or psychiatric doctor for an illness or experience any shortness of breath not related to smoking.  She stated she did not have any unexplained bleeding from any body opening or from growths under her skin.  Brister personally signed the form after it was completed.  Blackmon did add a note to the intake form that the plaintiff indicated that she had been sprayed with mace and her eyes were

3

bothering her.  Blackmon took the plaintiff to another area and assisted her in flushing out her eyes, after which he said she requested no further aid.

Upon her transfer to Marion County on or about August 20, 2004, , the plaintiff was visually inspected by the jail's Registered Nurse, Laura Stogner.  Stogner has testified that at the time of plaintiff's arrival, she had no visible signs of injury, no blood on her clothing and no signs of bruises or bleeding.  She said the plaintiff made no complaints of being injured and expressed no complaints that she was in pain.  Nor did the plaintiff request any medical attention from the time of her arrival until her release on August 24.  Stogner also stated that the plaintiff at first refused to take a shower insisting that she wanted her lawyer to "smell" her.  However, Brister later voluntarily showered.

The plaintiff asserts that her mother, children and one Eugene Bryant visited her in the Lawrence County Jail and/or the Marion County Jail and witnessed her condition and asked for medical assistance for her.  There is, however, no corroborating evidence in the record to support any such conduct on the part of Eugene Bryant.  The plaintiff's mother, Luella Quinn, has filed an affidavit in which she states that the plaintiff could not see or walk when she visited her in Lawrence County and that she saw bruises on her daughter's body and that she requested medical aid for her, which was refused.

After the plaintiff's ultimate release from jail, Quinn also took pictures of the plaintiff which have been provided as an exhibit.  The plaintiff was also taken to the Forrest General Hospital Emergency Room after her release where she remained from approximately 9:41 P.M. on the evening of August 24, until shortly after midnight.  The Forrest General records indicate that the plaintiff presented herself complaining of right

4

knee pain and vaginal pain after someone broke into her house and held her prisoner for five days.  A musculoskeletal examination was negative for pathologic fractures and strains and noted no swelling, no discoloration and no erythema.  Some weakness in her perineal nerve was noted and some laxity in the right lateral collateral ligament. She was discharged on Tylenol No. 3 with a diagnosis of sprain, right collateral ligament and inflamed vaginal mucosa for which she was given Lotrisone cream.  She was instructed to follow up with the Orthopedic on call.

There is no indication that the plaintiff received any further medical treatment until a hospitalization at St. Dominic's in Jackson from November 15 to November 19, 2006.  She was admitted after complaining of "having problems" in dealing with the incidents alleged in her complaint related to her arrest and detention.  She was discharged with a diagnosis of "AXIS 1: Depression with psychotic features" and "AXIS 2: Personality disorder, NOS."

Based on the plaintiff's subjective rendition of the alleged facts surrounding her arrest and detention of August 2004, Dr. Mark Valverde concluded that the plaintiff's condition is possibly related thereto.  The defendants have attacked Dr. Valverde's ability to causally relate any psychological injury allegedly suffered by the plaintiff to her arrest and detention in August of 2004 based on a fatal failure of the plaintiff to properly designate Dr. Valverde as an expert and to properly identify his areas of testimony. Magistrate Judge Parker has ruled that the designation of Dr. Valverde "will not be stricken but that he will be prohibited from offering any opinions other than those identified in the designation offered by the plaintiff and from basing any opinions on facts not summarily disclosed in the supplemental designation."

5

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."   *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d

6

265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## SECTION 1983 LIABILITY

The plaintiff must establish, as a prerequisite to maintaining a Section 1983 claim, the following:

(a) that the defendants were acting under color of state law, and
(b) that while acting under color or state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981);

*Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

8

**Section 1983 and Municipal Liability**

The Fifth Circuit discussed the standard to govern the imposition of municipal liability in Section 1983 actions in *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984):

> A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is:
>
> > 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority;
> >
> > or
> >
> > 2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

"The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority." *Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance." *Id.* at 769.

As stated previously, in order to find a municipality liable in a Section 1983 action, the constitutional deprivation must result from the implementation or execution

of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.  This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).

A municipality acts with "deliberate indifference" in adopting an otherwise constitutional policy if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Benavides v. County of Wilson,* 955 F. 2d 968, 972 (5th Cir. 1992).  In the current case, Brister has never alleged what specific policies of Lawrence, Marion or Walthall Counties inflicted constitutional injuries upon her.  Nor has the plaintiff ever identified what policies or procedures she claims caused any constitutional deprivation as a result of their implementation, or lack thereof, as related to the incidents of August of 2004.

A municipality cannot be held liable under Section 1983 on a *respondeat superior* theory.  *Id.* at 690; and *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir.1995).  The same is true of supervisory officials In that there must be some connection between the actions of the defendants and the alleged constitutional violations.  *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996); and *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986).   "Supervisory officials may be liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement

unconstitutional policies that causally result in plaintiff's injury." *Baker*, 75 F.3d at 199, (quoting *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5ᵗʰ Cir. 1992)).

The Fifth Circuit has instructed that "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5ᵗʰ Cir. 1996)(citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

In *Hare* the Fifth Circuit also held "that both medical care and failure-to-protect cases should be treated the same for purposes of measuring constitutional liability." Further,  when "a pretrial detainee's claim is based on a jail official's episodic acts or omissions, . . . the proper inquiry is whether the official had a culpable state of mind in acting or failing to act[,]" and that "a standard of deliberate indifference [is] the measure of culpability for such episodic acts or omissions." 74 F.3d at 643.  Restated, the court held "that the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." *Id.* at 647-48.


## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

As stated, in her Complaint, the plaintiff alleges that Lawrence and Marion County (as well as Walthall County) acted with deliberate indifference in failing to provide her with necessary and appropriate medical care.  To prove deliberate indifference, a pretrial detainee must show that the state official knew of and

11

disregarded an excessive risk to the inmate's health or safety.  *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  Deliberate indifference is more than mere negligence in failing to supply medical treatment.  *See id.*; *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982).  Disagreement with medical treatment alone cannot support a claim under § 1983.  *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).  An act is committed with deliberate indifference if both an objective component and a subjective component are present.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Under the objective component, the deprivation must be so serious as to deprive prisoners of the minimal civilized measures of life's necessities, such as the deprivation of a basic human need.  *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).  Under the subjective requirement, the court looks to the state of mind of the defendant.  The subjective prong is met if the official is both aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and also actually draws that inference.  *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1979.

The Fifth Circuit has defined "deliberate indifference" as "the subjective intent to cause harm."  *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).  "It is not the same as negligence."  *Id.*  "Negligent conduct by a prison official cannot be a basis for a due process claim."  *Id.* at 646.  Under a Mississippi statute, a governmental entity may only be held liable for an employee's actions if the employee "acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of the injury."  Miss. Code Ann. § 11-46-9(1)(c).  In recently decided Mississippi

12

Supreme Court cases, "reckless disregard" was determined to be "a higher standard than gross negligence and 'embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *City of Greenville v. Jones*, No. 2003-CA-02640-SCT ¶ 11 (Miss. March 30, 2006) (*quoting City of Jackson v. Powell*, 917 So.2d 59, 71 (Miss. 2005)).  *See also Bradley v. McAllister, et al*, No. 2004-CA-01657-COA ¶ 8 (Miss. May 16, 2006) (*quoting Turner v. City of Ruleville*, 735 So.2d 226, 230) (Miss. 1999)).  Additionally, in finding that officers did act with reckless disregard, the Supreme Court held that "the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Bradley*, No. 2004-CA-01657-COA ¶ 12 (*quoting City of Jackson v. Lipsey*, 834 So.2d 687, 693 (Miss. 2003).

The plaintiff has wholly failed to show that any of the County defendants or Deputy Allen treated her with deliberate indifference in ignoring a serious medical need. There is simply nothing in the record to support the plaintiff's claims that she was denied medical treatment other than her self-serving statements formulated well after the incidents in question.  All of the eye witness testimony of every person, except for the plaintiff's mother, who dealt with the plaintiff during her arrest and incarceration belie her claims of injury or requests for medical treatment.  Nor do the hospital records of her treatment immediately after release indicate that any serious medical need of the plaintiff was deliberately ignored by any of the defendants.

## FAILURE TO TRAIN OR SUPERVISE/ WALTHALL COUNTY

A careful perusal of the plaintiff's Complaint reveals that she has alleged "an illegal custom or practice and/or a custom or policy of inadequate training, supervision, discipline, screening, or hiring" on the part of Walthall County which led to the alleged constitutional deprivations purportedly visited upon the plaintiff.  To establish a claim under § 1983 for failure to train or supervise, "the plaintiff must show that: 1) the supervisor either failed to supervise or train the subordinate official; 2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and 3) the failure to train or supervise amounts to deliberate indifference".  *Estate of Davis v. City of North Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005).  To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is "obvious and obviously likely" to result in a constitutional violation.  *Id.* at 381.  To recover under a failure to train or supervise rationale, Brister would have to prove that Walthall County failed to control Deputy Martin's "known propensity for the improper use of force".  *See Roberts v. City of Shreveport,* 397 F.2d 287, 292 (5th Cir. 2002).

The Fifth Circuit has declined to find governmental liability for failure to train where the individual law enforcement officers successfully completed the minimum training mandated by state law.  *Benavides,* 955 F. 2d at 973.  To support a failure to train claim, a plaintiff must show that any failure to train by the governmental entity reflects a "deliberate" or "conscious" choice to endanger constitutional rights.  *City of Canton Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  An

adequate training program must "enable officers to respond properly to the usual and recurring situations with which they must deal." *Benavides*, 955 F. 2d at 973.  It is undisputed that Deputies Martin and Allen completed the training program required by the State of Mississippi.  Further, under Supreme Court precedent, a single episodic event of unconstitutional activity, as has been offered by the plaintiff, is not sufficient to impose liability unless it is shown that the incident was caused by existing unconstitutional policies attributable to the policy makers.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

In the present case, Brister has failed to present evidence which raises a genuine issue of material fact regarding the existence of an official custom or policy or a pattern of constitutional violations by Deputy Martin upon which liability could be imposed upon Walthall County.  In fact, the evidence shows that Deputy Martin has no history of constitutional violations or any previous complaints of excessive force.  Both deputies were certified in the use of OC spray.  The plaintiff has the burden of proof tp provide evidence that the training provided to the deputies is constitutionally inadequate.  She has failed to even allege or identify what training the deputies should have received to failed to meet constitutional specifications.  Therefore, these claims are subject to dismissal.

### QUALIFIED IMMUNITY

The Fifth Circuit has held that "government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

Under the two step analysis employed by the Fifth Circuit in reviewing claims wherein qualified immunity has been asserted, the Court must first determine "whether the plaintiff has asserted the violation of a clearly established constitutional right.  If so, the court decides whether the defendant's conduct was objectively reasonable." *Sorenson*, 134 F.3d at 327 *(quoting Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997)(applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)).  The first step "is subdivided into three questions: (1) whether a constitutional violation is alleged; (2) whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that a violation occurred." *Dudley v. Angel*, 209 F.3d 460, 462 *(quoting Kerr v.Lyford,* 171 F.3d 330, 339 (5th Cir. 1999)*(citing Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).

## EXCESSIVE FORCE CLAIM

In her complaint, Brister alleges that Deputy Martin used excessive force in arresting her when he used pepper spray "while the plaintiff was under arrest for an offense of minor severity".  *See Complaint, p. 8.*  To state a claim for excessive force, a plaintiff must show that she 1) suffered some injury which 2) resulted from force that was clearly excessive to the need for force; 3) the excessiveness of which was

16

objectively unreasonable.  *Heitschmidt v. City of Houston*, 161 F. 3d 834, 839 (5th Cir. 1998).

When examining the propriety of qualified immunity from excessive force claims, the court is faced with the unusual circumstance that the standard for stating a claim - the objective reasonableness of the force exerted, coincides in large part with the inquiry for determining qualified immunity - the objective reasonableness of the officer's conduct. *Id.* at 839.  A plaintiff alleging an excessive force claim must show that he has suffered "at least some injury". *Id.*  The extent of an injury is an element of an excessive force claim which must be clearly established in the second prong of the qualified immunity analysis.  *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir. 1996).  When alleging an excessive force claim, a plaintiff must show that she sustained more than a *de minimus* injury.  *See Tarver v. City of Edna,* 410 F.3d 745, 752 (5th Cir. 2005).  The injuries must result directly and only from the defendant's use of force. *Thomas v. Murray,* 107 F. Supp. 2d 748, 757 (N.D. Tex. 2000) citing *Knight v. Caldwell,* 970 F.2d 1430, 1432-33 (5th Cir. 1992).

Whether the force used was objectively unreasonable depends on the facts and circumstances of the particular case and includes 1) the severity of te crime, 2) whether the suspect posed an immediate threat to the safety of the officer or others and 3) whether the plaintiff was actively resisting arrest or was attempting to evade arrest.  *Gutierrez v. City of San Antonio*, 139 F. 3d 441, 447 (5th Cir. 1998). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than 20/20 hindsight.  *Id.*  If the law did not put

17

the officer on notice that his conduct would clearly be unlawful, summary judgment based upon qualified immunity is appropriate. *Hill v. Carroll County, Mississippi,* 467 F. Supp. 2d 696, 702 (N.D. Miss. 2006).

Deputy Martin contends that his use of pepper spray in this case was lawful and not in violation of the Fourth Amendment thus entitling him to qualified immunity in this case. Walthall County had a use of force policy in effect at the time of this incident which provided that Deputy Martin was permitted to use chemical weapons to gain control of a suspect who was actively resistant to his efforts to arrest her.

Pursuant to the Use of Force continuum and the policy of the Walthall County Sheriff's Department, if a suspect is perceived by the officer as being actively resistant (resisting instructions and making movement), the appropriate level of response of the officer is compliance techniques, including use of chemical weapons, use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, lateral vascular neck restraint, and other forms of rough physical force.

An officer is required not to relax care until the suspect is fully secured. The Use of Force Policy employed by the Walthall County Sheriff's Department utilizes a use of force continuum which is nationally accepted as an appropriate policy guideline for the use of force. The State of Mississippi teaches such a use of force continuum in training and certifying law enforcement officers as required by Miss. Code Ann. § 45-6-1 through 45-6-17.

Although Brister denies that she was resisting arrest, she testified that she tried to get away from Deputy Martin, that she used her hands defensively and that she bit

18

him.  *See Deposition of Denetris Brister, p.112-113, 116.*  These admissions alone prove that Brister was being actively resistant when Deputy Martin tried to effectuate an arrest of her pursuant to a valid Lawrence County warrant.  Brister's admitted resistance authorized Deputy Martin to use necessary force to obtain control of Brister based upon his training at the academy and pursuant to the policy of the Walthall County Sheriff's Department.  This necessary force included the appropriate use of pepper spray.

Ronald L. Crew, an instructor and expert in the filed of teaching and certifying officers in the use of force, opined that Deputy Martin acted with restraint and that a higher level of force may have been needed to capture the plaintiff if Martin had initially retreated.  Crew opined that Martin's use of chemical spray was the best course of action in this case because of the presence or near presence of potential weapons available to the plaintiff and the fact that children were nearby.

Brister has provided no evidence that Martin's use of pepper spray during her arrest was unreasonable or violative of her constitutional rights.  She has provided no evidence that Martin's use of pepper spray was unwarranted in light of her admitted resistance in this case.  She has the burden of coming forward with evidence that Martin's reliance upon his training and the policy of the Walthall County Sheriff's Department was objectively unreasonable and that the use of pepper spray in arresting her was unlawful. The excessive force claims against Martin fail and he is entitled to summary judgment based upon qualified immunity.

## STATE LAW CLAIMS

To the extent that the plaintiff asserts claims under Mississippi law, the defendants seek immunity pursuant to the dictates of the Mississippi Tort Claims Act, as codified at Miss. Code Ann. § 11-46-1, *et seq.*  The defendants assert that they are entitled to immunity for all acts which occurred while its employees were within the course of employment.  Mississippi Code Section §11-46-5, provides in part, that:

> ...(2) For the purposes of this chapter … a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.
>
> (3) For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.

Mississippi Code Section §11-46-5.

The allegations raised in the plaintiff's Complaint occurred when the defendants' employees were in the course and scope of their employment with their respective Counties.  As the defendants' employees were at their place of employment for work purposes for the purpose of all allegations asserted by the plaintiff, the Counties argue that they are entitled to the presumption that they were in the course and scope of employment.  Thus, absent admissible and competent proof of fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations, these defendants are entitled to complete immunity.  Mississippi Code Section §11-46-7 (2) states:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the

employee's duties.  For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

In addition, Miss. Code Ann. §11-46-9 provides that a governmental entity and its employees acting within the course and scope of their employment shall not be liable for any claim based upon an act or omission enumerated therein.  If the acts or omissions fall under any one the subsections of Miss. Code Ann. §11-46-9, then the governmental entity is exempt from liability.

The Mississippi Tort Claims Act at Section 11-46-9(1)(d) exempts governmental entities from liability in actions that are based upon the exercise of a discretionary function, or a duty on the part of a governmental entity or employee, whether or not the discretion be abused.  It states:

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

…

(d) based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Miss. Code Ann. § 11-46-9 (1)(d).

Similarly, pursuant to Miss. Code Ann. § 11-46-9(1)(m), all claims against a governmental entity that arise while the claimant (here, Ms. Brister) is an inmate, are barred by sovereign immunity. The Mississippi Tort Claims Act at Section 11-46-9(1)(d) provides:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of

21

whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed;

Miss. Code Ann. § 11-46-9(1)(m)(Supp. 1998).

While there are exceptions from immunity for claims of fraud, malice, libel, slander, defamation or a criminal offense, none of these exceptions are applicable in this case.  There is no dispute that Denetris Brister was an inmate at all times relevant to the case *sub judice* and the plaintiff's state law claims are thus *per se* barred by Miss. Code Ann. Section 11-46-9(1)(m) .

To the extent that the plaintiff seeks to impose liability against the defendants for any purported state law claim arising during her period of incarceration in the Lawrence County Jail or the county side of the Marion-Walthall Correctional Facility, the defendants argue that all such claims are barred by Miss. Code Ann. §11-46-9(1)(m) and/or 11-46-9(c), as the plaintiff was an inmate at a detention center when any such claim arose, and all such claims are statutorily exempted from the waiver of sovereign immunity set forth in the Sovereign Immunity Act, Miss. Code Ann. §§ 11-46-1, *et seq*. As recognized by the United States Court of Appeals for the Fifth Circuit, "Under Mississippi law, an exemption for the waiver for sovereign immunity exists if the defendants are governmental officials acting in the course and scope of their employment and the complainant was incarcerated at the time of the alleged acts." *Joseph Jones v. City of Jackson*, 203 F.3d 875, 881 (5th Cir. 2000)(citing Miss. Code Ann. § 11-46-9(1)(m)).  Thus, any purported state law claim otherwise possessed by Denetris Brister arose during her period of incarceration as an inmate in the Lawrence County Jail and Marion-Walthall Correctional Facility.  The defendants thus, are entitled

to the protection of sovereign immunity as set forth in Miss. Code Ann. § 11-46-1, et seq.

(Supp. 1998).

The defendants also argue that they are entitled to the exemption provided for

duties of law enforcement officers.  Miss. Code Ann. § 11-46-9(1)(c) provides,

> A governmental entity and its employees acting within the course and scope of
> their employment or duties shall not be liable for any claim...[a]rising out of any
> act or omission of an employee of a governmental entity engaged in the
> performance or execution of duties or activities relating to police or fire protection
> unless the employee acted in reckless disregard of the safety and well-being of
> any person not engaged in criminal activity at the time of injury[.]

Miss. Code Ann. § 11-46-9(1)(c) (1998).  This exemption applies to all duties "relating to"

police protection.  The defendants were performing duties which are an integral part of

police protection; protecting citizens, and incarcerating persons who have been accused

of criminal activity until such time as their release is approved by a judicial officer after

serving their sentence or dismissal of the charges against them.  For this reason in

addition to the foregoing grounds, the defendants are entitled to sovereign immunity on

all state law claims.

The defendants also assert that they are entitled to protection pursuant to the

provisions of Miss. Code Ann. § 11-46-11(1), which provides:

> After all procedures within a governmental entity have been exhausted, any
> person having a claim for injury arising under the provisions of the chapter against
> a governmental entity or its employee shall proceed as he might in action at law
> or in equity; provided, however, that ninety (90) days prior to maintaining an
> action thereon, such person shall file a notice of claim with the chief executive
> officer of the governmental entity. Service of the notice of claim may also be had
> in the following manner: if the governmental entity is a county, then upon the
> chancery clerk of the county sued …

Miss. Code Ann. § 11-46-11(1) (1998).  The defendants correctly point out that the

23

plaintiff has simply failed to provide the required notice of claim to the defendants. There is nothing to indicate that the plaintiff filed a notice of claim with any of the defendants. Therefore, by law, her state law claims are clearly barred since the Mississippi Tort Claims Act, as codified at Miss. Code Ann. §§11-46-1 to 23 (Rev.2002), which provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit.  *Lang v. Bay St. Louis/Waveland Sch. Dist.,* 764 So.2d 1234, 1236 (Miss.1999).  Thus, pursuant to the applicable portions of the Act, the defendants are entitled to immunity.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motions for Summary Judgment **[#s121-124 & 128]** filed on behalf of the defendants are Granted and the plaintiff's Complaint is dismissed with prejudice and any other pending motions are denied as moot.

A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure..

SO ORDERED AND ADJUDGED this the 1st day of August, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE